**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. _____-CIV-_____**

MICHAEL JORDAN,
*individually and on behalf of*
*others similarly situated*,

      Plaintiff,

vs.

                               **CLASS ACTION**

GBUTTER LLC, a Florida limited
liability company, and GSWEAT LLC,
a Florida limited liability company,
                               **JURY TRIAL DEMANDED**

      Defendants.

_____/

**CLASS ACTION COMPLAINT**

      Plaintiff, MICHAEL JORDAN, individually, and on behalf of all others similarly situated,

by and through undersigned counsel, alleges the following in support of his complaint:

**NATURE OF ACTION**

      1.      This is a consumer class action brought individually by Plaintiff, and on behalf of

all persons in the below-defined proposed Classes, all of whom purchased the following varieties

of Defendants' product, G-Butter, a supposed "high protein[,] low calorie" nut-based spread (the

"Product"):

| Total Amounts Claimed on Product Labels (per 2tbsp/40g serving) | | | | | |
|---|---|---|---|---|---|
| **Product Name** | **Calories** | **Carbs (g)** | **Fat (g)** | **Protein (g)** | **Sugar (g)** |
| a. Birthday Cake | 100 | 5 | 5 | 10 | 1 |
| b. Brownie Batter | 115 | 5 | 7 | 10 | 1 |
| c. Cookie Dough | 157 | 5 | 9 | 14 | 1 |
| d. Cookies & Cream | 120 | 6 | 5 | 12 | 1 |
| e. Peanut Butter Cup | 120 | 5 | 5 | 12 | 1 |

| | | | | | | |
|---|---|---|---|---|---|---|
| f. | Pumpkin Spice | 100 | 4 | 5 | 10 | 1 |
| g. | Red Velvet Icing | 120 | 5 | 6 | 12 | 1 |
| h. | S'mores | 130 | 5 | 7 | 12 | 1 |
| i. | Sugar Cookie | 100 | 5 | 5 | 10 | 1 |
| j. | Vegan Cookie Dough | 157 | 5 | 9 | 14 | 1 |
| k. | White Chocolate | 157 | 5 | 5 | 12 | 1 |

*See* Comp. Ex. 1 (Exs. 1A-K) (Front & Nutrition Fact portions of Product Labels).

2.      Except for the Vegan Cookie Dough variation of the Product, Defendants use the very front of the Product's labels to claim that the Product is a "high protein low calorie spread." *See* Comp. Ex. 1.

3.      Defendants' business centers entirely on the Product. The Product, when not considering the number of variations thereof independently, appears to be the only item that Defendants manufacture, market, and sell.

4.      Defendants' website also makes the following claims about the Product, its ingredients, and Defendants' unequivocal intent to have the Product be deemed by potential consumers as one that is "high protein" and "low calorie—" essentially a health food and protein supplement:

> Our mission is to stay true to our *high quality standards* and make *eating healthy* a long term *lifestyle*, while still tasting exceptional.

> Our values serve as a platform of *integrity*, which means we don't just sell any nut butter, we are selling a new and improved kind of nut butter, *a lifestyle*.

> G Butter uses no artificial food preservatives, is non GMO, and gluten free, all natural, no sugar added, and *low calories, making it guilt free* for your sweet tooth addictions.

> Our vision and dedication remains strong in making nut butter great again . . . and helping people *live a healthy lifestyle* while still enjoying foods that fuel your machine.

*See* Ex. 2 (emphasis added).[1]

5.      Apparently, and as a direct result of their marketing efforts and claims, Defendants' have enjoyed financial success. Defendants' website boasts:

> G Butter has become an *international nut butter spread* that *revolutionized* the *meaning of healthy* and provides an addictive flavor for people . . .

> G Butter has proudly grown into one of the world's most innovative nut butters with *over thousands of satisfied customers*.

> G butter is now located in *over 2,000 stores worldwide*.

> G Butter has quickly become a *household name* and an *instant hit*.

*See* Ex. 2 (emphasis added).

6.      Defendants only manufacture and sell "12.6-ounce," or 352-gram, jars of the Product. Each jar of the Product retails for $12.99. The Product, and the variations thereof, are available for purchase through Defendants' website, *see* Comp. Ex. 1, and through other 'e-tail' websites, including Amazon (amazon.com) and Walmart (walmart.com). According to Defendants' website, the Product is also sold in "over 2,000 stores worldwide." *See* Ex. 2.

7.      Accordingly, Defendants formulated, manufactured, warranted, advertised, and sold the Product throughout the United States, including the State of California.

8.      However, unbeknown to Plaintiff and the Members of the proposed Classes, all of whom relied upon Defendants' advertising and Product label claims in deciding to purchase the Product, the Product sold by Defendants was not a healthy food, doesn't lend itself to a healthy lifestyle, did not contain accurate Nutrition Facts label statements, was not a low-calorie food, and was not a notable source of protein—all contrary to Defendants' claims relating to the Product and its nutritional content.

---

[1]      Information available at: www.gbutter.com/our-story (last accessed Oct. 11, 2019).

9.     Instead, and in fact, as discussed in more detail below, the Defendants' Product's labels significantly understate the total amounts of calories, carbohydrates, fat, and sugar the Product actually contains per each two-tablespoon (or 40-gram) serving (a "Serving"). In addition, the Product's labels significantly overstate the amount of protein the Product actually contains per Serving.

10.     As discussed below, Defendants' over- and under-statements of key nutritional information are so substantial and deviate well beyond the bounds of any legally permissible margins of error, that had the Plaintiff and Members of the proposed Classes known of the true nutritional content of Defendants' Product, they would have not purchased the Product.

11.     Indeed, Defendants' labeling of the Product is in gross violation of every state and federal product labeling law in the United States.

12.     Defendants, who have the resources to conduct their own nutritional testing, had no reasonable basis to believe that the Nutrition Fact statements on the labels of their Product were accurate and, therefore, knew, or should have known, that the Product's labeling is deceptive, misleading, constitutes a fraud on consumers, and does not comply with applicable Federal laws and regulations. Nevertheless, Defendants continue to advertise, distribute, label, manufacture, market, and/or sell the Product in a false, misleading, unfair, and/or deceptive manner.

13.     As a result of Defendants' unlawful and deceptive conduct, Plaintiff and the Members of the proposed Classes seek actual damages, injunctive and declaratory relief, interest, costs, and reasonable attorneys' fees.

## PARTIES

14.     Plaintiff, Michael Jordan, is a citizen of the State of California, residing in Los Angeles, and is a Member of the proposed Classes defined below. Mr. Jordan purchased the

Product for his own consumption on numerous occasions during the four years preceding the filing of this Complaint. Mr. Jordan and Members of the proposed Classes suffered the same injury in fact, which was directly and proximately caused by the false, fraudulent, unfair, deceptive, and misleading practices of the Defendants, as set forth in this Complaint. Plaintiff and Members of the proposed Classes would not have purchased the Product if the Nutrition Facts statements were accurate.

15.     Defendant, GButter LLC, is a Florida limited liability company with its principal place of business located at: 11125 SW 156 Place, Miami, Florida 33196.

16.     Defendant, GSweat LLC, is a Florida limited liability company with its principal place of business located at: 11125 SW 156 Place, Miami, Florida 33196.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. s. 1332(d)(2), because the claims of the Plaintiff and Members of the proposed Classes exceed $5,000,000, and because Defendants are citizens of a different state than most Members of the below-defined proposed Classes.

18.     This Court has personal jurisdiction over Defendants, because Defendants' principal places of business are located in this District, Defendants regularly conduct business in this District, and/or Defendants knowingly and consciously cause their Product to be sold to consumers in this District.

19.     This Court is the proper Venue because a substantial portion of the events complained of occurred in this District and this Court has jurisdiction over the Defendants.

***Nature and Extent of Defendants' Mislabeling of the Product and Its Nutritional Content***

20.      Defendants only manufacture, market, distribute, and sell one product—G-Butter. The Product, G-Butter, is advertised by Defendants as a "high protein & low calorie spread made with nuts!" Below is the product description included on Defendants' website[2]:

### INSIDE THE JAR

**G Butter is a high protein & low calorie spread made with nuts!**
Each flavor is made with its own unique nut and high quality ingredients.



---

[2]      Information available at: www.gbutter.com/inside-the-jar (last accessed Oct. 11, 2019).

21.     Currently, Defendants offer 11 flavors, of the Product. The nutritional content for the 11 variations of the Product is substantially similar. What follows are depictions of the front of the labels of the 11 varieties of the Product:





*See* Comp. Ex. 1.

22.     These labels demonstrate that Defendants prominently advertise, on the very front of each label, that the Product is a "high protein low calorie spread." Also, on the left-hand side of each label, Defendants highlight, emphasize, and boldly restate for the potential consumer the total grams of protein, carbohydrates, and sugar purportedly contained in a Serving of the Product.

23.     Below is a summary of the nutrient-related claims Defendants make in the Nutrition Facts section of the labels corresponding to each variation of their Product:

| Total Amounts Claimed on Product Labels (per 2tbspn/40g serving) | | | | | |
|---|---|---|---|---|---|
| Product Name | Calories | Carbs (g) | Fat (g) | Protein (g) | Sugar (g) |
| Birthday Cake | 100 | 5 | 5 | 10 | 1 |
| Brownie Batter | 115 | 5 | 7 | 10 | 1 |
| Cookie Dough | 157 | 5 | 9 | 14 | 1 |
| Cookies & Cream | 120 | 6 | 5 | 12 | 1 |
| Peanut Butter Cup | 120 | 5 | 5 | 12 | 1 |
| Pumpkin Spice | 100 | 4 | 5 | 10 | 1 |
| Red Velvet Icing | 120 | 5 | 6 | 12 | 1 |
| S'mores | 130 | 5 | 7 | 12 | 1 |
| Sugar Cookie | 100 | 5 | 5 | 10 | 1 |
| Vegan Cookie Dough | 157 | 5 | 9 | 14 | 1 |
| White Chocolate | 157 | 5 | 5 | 12 | 1 |

*See* Comp. Ex. 1.

24.     In stark contrast, below is a summary of the results derived from independent laboratory testing of the nutritional content of certain varieties of the Product[3]:

| Total Amounts derived by Independent Lab Testing (per 2tbsp/40g serving) | | | | | |
|---|---|---|---|---|---|
| Product Name | Calories | Carbs (g) | Fat (g) | Protein (g) | Sugar (g) |
| Birthday Cake | 227.2 | 11.03 | 18.56 | 3.99 | 3.02 |
| Brownie Batter | 223.6 | 9.02 | 18.90 | 4.32 | 1.68 |
| Cookie Dough | 222.8 | 11.38 | 17.78 | 4.36 | 3.62 |
| Peanut Butter Cup | 233.2 | 8.03 | 20.18 | 4.90 | 1.43 |
| Red Velvet Icing | 220.8 | 12.67 | 17.10 | 4.00 | 3.57 |
| Sugar Cookie | 228.0 | 8.88 | 19.48 | 4.25 | 1.59 |
| Vegan Cookie Dough | 223.6 | 12.98 | 17.85 | 2.76 | 4.38 |
| White Chocolate | 221.6 | 10.26 | 18.16 | 4.30 | 2.38 |

---

[3]     The Cookies & Cream, Pumpkin Spice, and S'mores variations of the Product were not submitted for independent laboratory testing.

*See* Comp. Ex. 3 (Results of Independent Lab Testing of Product).

25.     The following trends and patterns emerge from the above-provided data. For one, every variation of the Product appears to actually contain more than 220 calories **per Serving**. When that is compared to the information provided by Defendants' labels, however, it is evident that Defendants have consistently understated the calories per Serving of the Product by nearly 100%.

26.     Next, Defendants' labels indicate that no variation of the Product contains more than six (6) grams of carbs per Serving. For nearly all variations, Defendants' claim the Product contains five (5) grams of carbs per Serving. Yet, the information derived from the independent laboratory testing demonstrates that no variation of the Product actually contains less than eight (8) grams of carbs per Serving. And, in more cases than not, the amount of carbs per serving of the Product equals or exceeds ten (10) grams of carbs per Serving. Consequently, Defendants have consistently understated the total carbs per Serving of the Product by nearly 100%.

27.     What's more, Defendants' label claims indicate that no variation of the Product contains more than nine (9) grams of fat per Serving. For most variations of the Product, Defendants claim that each Serving purportedly contains only five (5) grams of fat. The independent lab test results starkly belie Defendants claims. It appears that no variation of the Product actually contains less than 17 grams of total fat per Serving. Consequently, Defendants have consistently understated the amount of fat per Serving of the Product by at least 200%.

28.     Finally, depending on the variation of the Product, Defendants' label claims indicate that the Product contains either 10, 12, or 14 grams of protein per Serving. In contrast, the independent lab test results demonstrate that no variation of the Product actually contains even

five (5) grams of protein per Serving. Consequently, Defendants' have consistently overstated the amount of protein in a Serving of the Product by over 50%.

29. As it concerns the three variations of the Product that were not submitted for independent testing prior to the filing of this Complaint,[4] given the independent lab results that were obtained for other variations of the Product, there is simply no reason to believe that those three variations of the Product are not also mislabeled by Defendants in a manner similar to the other variations of the Product—an overstatement of the amount of protein and an understatement of the amounts of calories, carbohydrates, fat, and sugar.

30. In an effort to demonstrate the extent of Defendants' erroneous nutritional-related claims, below is a summary of the mathematical differences between the amounts derived from the independent laboratory testing as compared to the amounts stated by Defendants on the various Product labels[5]:

| Amount Differences (Lab Results minus Label Claims) (per 2tbsp/40g serving) | | | | | |
|---|---|---|---|---|---|
| **Product Name** | **Calories** | **Carbs (g)** | **Fat (g)** | **Protein (g)** | **Sugar (g)** |
| Birthday Cake | 127.2 | 6.03 | 13.56 | -6.01 | 2.02 |
| Brownie Batter | 108.6 | 4.02 | 11.90 | -5.68 | 0.68 |
| Cookie Dough | 65.8 | 6.38 | 8.78 | -9.64 | 2.62 |
| Peanut Butter Cup | 113.2 | 3.03 | 15.18 | -7.10 | 0.43 |
| Red Velvet Icing | 100.8 | 7.67 | 11.10 | -8.00 | 2.57 |
| Sugar Cookie | 128.0 | 3.88 | 14.48 | -5.75 | 0.59 |
| Vegan Cookie Dough | 66.6 | 7.98 | 8.85 | -11.24 | 3.38 |
| White Chocolate | 64.6 | 5.26 | 13.16 | -7.70 | 1.38 |

*Compare* Comp. Ex. 3 with Comp. Ex. 1.

---

[4]     The Cookies & Cream, Pumpkin Spice, and S'mores variations of the Product were not submitted for independent laboratory testing.
[5]     Positive values represent the amount by which Defendants' Product labels have understated the total amount of certain nutritional content contained in a Serving of the Product. Negative values represent the amount by which Defendants have overstated the total amount of certain nutritional content contained in a Serving of the Product.

31.     As an alternative way to visually demonstrate the extent of Defendants erroneous nutritional-related clams, below is a summary of the mathematical differences between the amounts derived from the independent laboratory testing as compared to the amounts stated by Defendants on the various Product labels, expressed as percentages[6]:

| Percentage of Defendants Over-/Under-Statements (per 2tbsp/40g serving) | | | | | |
|---|---|---|---|---|---|
| **Product Name** | **Calories** | **Carbs (g)** | **Fat (g)** | **Protein (g)** | **Sugar (g)** |
| Birthday Cake | 127.20% | 120.60% | 271.20% | -60.10% | 202.00% |
| Brownie Batter | 94.43% | 80.40% | 170.00% | -56.80% | 68.00% |
| Cookie Dough | 41.91% | 127.60% | 97.56% | -68.86% | 262.00% |
| Peanut Butter Cup | 94.33% | 60.60% | 303.60% | -59.17% | 43.00% |
| Red Velvet Icing | 84.00% | 153.40% | 185.00% | -66.67% | 257.00% |
| Sugar Cookie | 128.00% | 77.60% | 289.60% | -57.50% | 59.00% |
| Vegan Cookie Dough | 42.42% | 159.60% | 98.33% | -80.29% | 338.00% |
| White Chocolate | 41.15% | 105.20% | 263.20% | -64.17% | 138.00% |

### Defendants' Mislabeling Violates Federal Law & Regulations

32.     The Food and Drug Administration ("FDA") is responsible for assuring that foods sold in the United States are safe and properly labeled. This applies to foods produced domestically, as well as foods from foreign countries. The Federal Food, Drug, and Cosmetic Act ("FD&C Act"), *see* 21 U.S.C. § 301, *et seq.*, and the Fair Packaging and Labeling Act ("FP&L Act") are the Federal laws governing food products under the FDA's jurisdiction.

33.     The Nutrition Labeling and Education Act ("NLEA"), which amended the FD&C Act requires most foods to bear nutrition labeling and requires food labels that bear nutrient content claims and certain health messages to comply with specific requirements.

34.     The Product is a "food" as that term is defined at 21 U.S.C. § 321(f). Accordingly, the Product must comply with the requirements of the Food, Drug, and Cosmetic Act ("FD&C"

---

[6]     Positive values represent the percentage by which Defendants' Product labels have understated the total amount of certain nutritional content contained in a Serving of the Product. Negative values represent the percentage by which Defendants' Product labels have overstated the total amount of certain nutritional content contained in a Serving of the Product.

Act) codified at 21 U.S.C. § 301, *et seq*. In addition, the Product must also comply with the related FDA regulations codified at 21 C.F.R. §§ 101.9 and 101.13.

35. However, Defendants' false and misleading statements relating to the Product's nutrient content on the Product's labels render the Product "misbranded" as that term is defined at 21 U.S.C. § 343, *et seq*.

36. Pursuant to 21 C.F.R. § 101.9(c)(1), Defendants are required to accurately state the "total calories" per Serving of the Product to "the nearest 10-calorie increment." Defendants' labels fail to conform to this requirement.

37. Pursuant to 21 C.F.R. § 101.9(c)(2), Defendants are required to accurately state the "total fat" per Serving of the Product to "the nearest gram increment." Defendants' labels fail to conform to this requirement.

38. Pursuant to 21 C.F.R. § 101.9(c)(6), Defendants are required to accurately state the "total carbohydrates" per Serving of the Product to "the nearest gram." Defendants' labels fail to conform to this requirement.

39. Pursuant to 21 C.F.R. § 101.9(c)(6)(ii), Defendants are required to accurately state the "total sugars" per Serving of the Product to "the nearest gram." Defendants' labels fail to conform to this requirement.

40. Pursuant to 21 C.F.R. § 101.9(c)(7), Defendants are required to accurately state the amount of "protein" per Serving of the Product to "the nearest gram." Defendants' labels fail to conform to this requirement.

41. Federal regulations, 21 C.F.R. § 101.9(c)(9), provide the following Daily Reference Values ("DRVs"), which are based on caloric intake of 2000 calories, for the following particular nutrients:

| Food Component | Unit of Measure | Adults and Children ≥ 4 Years |
|---|---|---|
| Fat | Grams (g) | 78 |
| Total Carbohydrates | Grams (g) | 275 |
| Protein | Grams (g) | 50 |

42.     Federal regulations divide nutrients into two categories, "Class I" and "Class II." *See* 21 C.F.R. § 101.9(g)(3).

43.     Federal regulations also establish guidelines that define when a food label declaration renders a food misbranded. At times, these criteria differ depending on the nutrient and whether the nutrient falls into Class I or Class II. *See* 21 C.F.R. §§ 101.9(g)(4)-(5).

44.     When protein meets the definition for Class I nutrients, a food label will be deemed misbranded unless "the nutrient content of the composite [is] formulated to be at least equal to the value for the nutrient declared on the label." 21 C.F.R. § 101.9(g)(4)(i). In the event that the protein in the Product is deemed a Class I nutrient, Defendants' protein-related label claims fail to conform to this requirement as Defendants' labels consistently overstate the amount of protein per Serving of the Product.

45.     When total carbohydrate or protein meets the definition for Class II nutrients, a food label will be deemed misbranded unless "the nutrient content of the composite [is] equal to 80 percent of the value for that nutrient declared on the label." 21 C.F.R. § 101.9(g)(4)(ii). In the event that the protein in the Product is deemed a Class II nutrient, Defendants' protein-related label claims fail to conform to this requirement as Defendants' labels consistently overstate the amount of protein per serving of the Product by more 20%. In addition, Defendants' total carbohydrate-related label claims fail to conform to this requirement as Defendants' labels consistently understate the amount of total carbohydrates per serving of the Product by more than 20%.

46.     As it relates to food label declarations concerning calories, total sugars, and total fat, Federal regulations establish that a food label will be deemed misbranded "if the nutrient

content of the composite is greater than 20 percent in excess of the value for that nutrient declared on the label." 21 C.F.R. § 101.9(g)(5). Defendants' calories-, total sugars-, and total fat-related claims fail to conform to this requirement as Defendants' labels consistently overstate the amount of these nutrients per Serving of the Product by more than 20%.

47.    In addition to non-conforming Nutrition Facts statements, Defendants also make various false Nutrient Content Claims ("NCCs") about the Product. NNCs are claims on a food product that directly or by implication characterize the level of a particular nutrient in the food (*e.g.*, "low fat," "high in oat bran," or "contains 100 calories"). *See* 21 C.F.R. § 101.13(a)-(b). Because Defendants make NCCs about the Product, a variety of information is required to appear on Defendants' labels depending on the claim and what information is needed to prevent the claim from being misleading. Nutrition labeling is required for virtually all such claims. *See* 21 C.F.R. § 101.13(n). Defendants labels do not comply with these requirements.

48.    Defendants make at least two NCCs about the Product. Specifically, Defendants' claim the Product contains "high protein" and "low calorie[s]."

49.    NCCs for "good source," "high," "more," and "high potency," must conform to the requirements set forth at 21 C.F.R. § 101.54. Pursuant to 21 C.F.R. §§ 101.54(b), "high" claims may be used on the label and in the labeling of foods, "provided that the food contains 20 percent or more of the Reference Daily Intakes ("RDI") or the Daily Recommended Value ("DRV") per reference amount customarily consumed."

50.    According to 21 C.F.R. § 101.9(c)(9), the DRV for protein is 50 grams. Thus, in order for Defendants' to properly claim that the Product is "high [in] protein," the Product must contain at least 20% of the 50-gram DRV, or 10 grams. Yet, the independent lab test results of the variations of the Product demonstrate that no variation of the Product even contains five grams of

protein. Accordingly, Defendants' "high protein" NCC fails to conform to the applicable FDA regulations.

51.     NCCs related to the calorie content of foods must conform to the requirements set forth at 21 C.F.R. § 101.60. Pursuant to 21 C.F.R. §§ 101.60(b)(2) and (b)(2)(i)(B), in relevant part, the term "low calorie" may be used on a food label, provided that "the food has a reference amount customarily consumed of 30 g or less or 2 tablespoons or less and does not provide more than 40 calories per reference amount customarily consumed."

52.     Here, a serving of the Product amounts to two tablespoons, or 40 grams. Thus, in order for Defendants' to properly claim that the Product is "low calorie," the Product must contain no more than 40 calories per serving. Yet, the independent lab test results of the variations of the Product demonstrate that no variation of the Product contains less than 220 calories per Serving. Accordingly, Defendants' "low calorie" NCC fails to conform to the applicable FDA regulations.

53.     In addition, the nature of Defendants' NCCs and the nutrient content of the Product requires Defendants to include various disclosure statements on their labels. None such disclosure statements appear on any of Defendants' labels.

54.     A disclosure statement is a statement that calls the consumer's attention to one or more nutrients in the food that may increase the risk of a disease or health-related condition that is diet related. A disclosure statement is required when an NCC is made and when a nutrient in that food exceeds certain prescribed levels. *See e.g.*, 21 C.F.R. § 101.13(h)(1).

55.     Specifically, § 101.13(h)(1) states, in relevant part:

If a food . . . contains *more than 13.0 g of fat*, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium per reference amount customarily consumed, *per labeled serving*, or, for a food with a reference amount customarily consumed of 30 g or less or 2 tablespoons or less, per 50 g . . . then that food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows: "See nutrition information for __ content" with the blank

filled in with the identity of the nutrient exceeding the specified level, e.g., "See nutrition information for fat content."

56.     As demonstrated by the results of the independent laboratory testing conducted on the Product, a Serving of the Product contains total fat well in excess of the 13.0-gram requirement. Yet, Defendants include no related and required disclosure statements concerning the level of total fat in the Product.

57.     Accordingly, Defendants' mislabeling of the Product, which forms the basis of this lawsuit, constitutes a violation of 21 U.S.C. § 343.

***Plaintiff Relied Upon Defendants' Misrepresentations
in Deciding to Purchase and Consume the Product***

58.     Plaintiff was himself a victim of Defendants' misleading statements and mislabeling of the Product.

59.     Over the course of the last four (4) years, Plaintiff purchased the Product on several occasions for his own consumption.

60.     Plaintiff purchased and consumed the Product based on the aforementioned misrepresentations and/or omissions concerning the Product's nutrient content.

61.     Plaintiff would not have purchased and consumed the Product had he known the truth about the Product's nutrient content.

62.     Plaintiff is in the same Classes as all other consumers who purchased Defendants' Products during the relevant time period. Plaintiff and the members of the Classes were in fact misled by Defendants' misrepresentations and/or omissions relating to the Product. Plaintiff and members of the Classes would have purchased other health food snacks and/or protein supplements, if any at all, if they had not been deceived by the misleading and deceptive labeling, marketing, and advertising of the Product by Defendants.

## CLASS ACTION ALLEGATIONS

63.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully

set forth herein.

64.     Plaintiff brings this action individually and on behalf of all other persons similarly

situated, pursuant to Federal Rule of Civil Procedure 23. The class definition(s) may depend on

the information obtained throughout discovery. Notwithstanding, at this time, Plaintiff brings this

action and seeks certification of the following Classes:

> **National Class:** All persons within the United States who purchased the Product from the beginning of any applicable statutory limitations period through the date of class certification (the "National Class" or the "Class").

> **Consumer Fraud Multi-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Rhode Island, Texas, Washington and Wisconsin who purchased the Product from the beginning of any applicable statutory limitations period through the date of class certification (the "Consumer Fraud Multi-State Class").[7]

> **California Sub-Class:** All persons in California who purchased the Product from the beginning of any applicable limitations period through the date of class certification (the "California Sub-Class").

65.     Excluded from the Class are Defendants, and any entities in which Defendants have

a controlling interest, the Defendants' agents, employees, and their legal representatives, any Judge

to whom this action is assigned and any member of such Judge's staff and immediate family, and

Plaintiff's counsel, their staff members, and their immediate family.

---

[7] The States in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case as alleged herein: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 ILCS 505/1, *et seq.*), Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1); New Jersey (N.J. Stat. § 56:9-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); Rhode Island (R.I. Gen. L. Ch. 6-13.1); Texas (Tex. Bus. & Com. Code § 17.41, *et seq.*); Washington (Wash. Rev. Code § 19.86010, *et seq.*) and Wisconsin (Wis. Stat. § 100.18, *et seq.*).

66.     Plaintiff reserves the right to amend the Class definitions if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

67.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

68.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the hundreds to thousands. The precise number of members of the Classes and their addresses are presently unknown to Plaintiff, but may be ascertained from Defendant's books and records. Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

69.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes.  Such common questions of law or fact include, but are not limited to, the following:

   a.     Whether the Product contains the amount of protein per Serving, as labeled by Defendants;

   b.     Whether the Product contains the total amount of carbohydrates per Serving, as labeled by Defendants;

   c.     Whether the Product contains the total fat per Serving, as labeled by Defendants;

   d.     Whether the Product contains the total calories per Serving, as labeled by Defendants;

   e.     Whether the Product contains the total sugar per Serving, as labeled by Defendants;

   f.     Whether the Product violates Federal labeling requirements;

g.     Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are deceptive;

h.     Whether Defendants' actions violate the state consumer fraud statutes invoked below;

i.     Whether Defendants breached express warranties to Plaintiff and Members of the Classes;

j.     Whether Defendants were unjustly enriched at the expense of Plaintiff and Members of the Classes; and

k.     Whether Plaintiff and members of the Classes are entitled to injunctive relief.

70.     Defendants engaged in a common course of conduct giving rise to the legal rights Plaintiff seeks to enforce, on behalf of himself and the other members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

71.     **Typicality – Federal Rule of Civil Procedure 23(a)(3)**. Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, all members of the Classes were comparably injured through Defendants' uniform misconduct described above. Further, there are no defenses available to Defendants that are unique to Plaintiff or to any particular members of the Classes.

72.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Classes he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and he will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and the undersigned counsel.

73. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

74. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

75. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the Classes to individually seek redress for Defendants' wrongful conduct. Even if members of the Classes could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management

difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I

**Violation of the State Consumer Fraud Acts**
**(On Behalf of the Consumer Fraud Multi-State Class)**

76.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

77.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

78.     Plaintiff and the other Members of the Class have standing to pursue a cause of action for violation of the Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Class, because Plaintiff and Members of the Class have suffered an injury in fact and lost money as a result of Defendants' actions as set forth herein.

79.     Defendants' conduct described herein constitutes the use of unfair or deceptive business practices in the conduct of trade or commerce.

80.     Defendants intended that Plaintiff and each of the other Members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

81.     As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

82.     In addition, Defendants' conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Members of the Class, respectfully requests that the Court enter judgment and order as follows:

A. Declaring that this action is a proper class action, certifying the Consumer Fraud Multi-State Class as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Class;

B. Enjoining Defendants from engaging in the unlawful conduct set forth herein;

C. Ordering Defendants to pay actual damages to Plaintiff and the other Members of the Class;

D. Ordering Defendants to pay punitive damages, as allowable by law, to Plaintiff and the other Members of the Class;

E. Ordering Defendants to pay statutory damages, as provided by the applicable state consumer protection statutes invoked herein, to Plaintiff and the other Members of the Class;

F. Ordering Defendants to pay reasonable attorneys' fees and litigation costs to Plaintiff and the other Members of the Class;

G. Ordering Defendants to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

H. Ordering such other and further relief as may be just and proper.

## COUNT II

### Violation of the California's Unfair Competition Law
### (In the Alternative to Count I and on behalf of the California Sub-Class)

83. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

84. The California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.

85.     A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

86.     The violation of any law constitutes an "unlawful" business practices under the UCL.

87.     As detailed herein, the acts and practices alleged were intended to or did result in violations of numerous federal and state laws.

88.     As detailed herein, Defendants' conduct constitutes the act, use, and employment of false, misleading, or deceptive acts or practices in the conduct of Defendants' trade or commerce.

89.     Defendants' practices, as set forth above, have misled Plaintiff, the proposed Class, and the public in the past and will continue to mislead in the future. Consequently, Defendants' practices constitute an unlawful, fraudulent, and unfair business practice within the meaning of the UCL.

90.     Defendants' violation of the UCL, through its unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat that Class members and the public will be deceived into purchasing products based on price comparisons of arbitrary and inflated reference prices and substantially discounted sale prices. These false comparisons created phantom markdowns and lead to financial damage for consumers like Plaintiff and the Class.

91.     Pursuant to the UCL, Plaintiff is entitled to preliminary and permanent injunctive relief and order Defendants to cease this unfair competition, as well as disgorgement and restitution

to Plaintiff and the Class of all Defendants' revenues associated with its unfair competition, or such portion of those revenues as the Court may find equitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the California Sub-Class proposed in this Count, respectfully requests that the Court enter judgment as follows:

A. Declaring that this action is a proper class action, certifying the California Sub-Class as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Class;

B. Enjoining Defendants from engaging in the unlawful conduct set forth herein;

C. Ordering Defendants to pay actual damages to Plaintiff and the other Members of the Class;

D. Ordering Defendants to pay punitive damages, as allowable by law, to Plaintiff and the other Members of the Class;

E. Ordering Defendants to pay reasonable attorneys' fees and litigation costs to Plaintiff and the other Members of the Class;

F. Ordering Defendants to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

G. Ordering such other and further relief as may be just and proper.

## COUNT III

### Violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, et seq.

92. Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

93. This cause of action is brought pursuant to the CLRA, Cal. Civ. Code § 1750, et seq. Plaintiff and each member of the proposed Class are "consumers" as defined by Cal. Civ. Code § 1761(d). Defendants' sale of the merchandise to Plaintiff and the Class were "transactions"

within the meaning of Cal. Civ. Code § 1761(e). The products purchased by Plaintiff and the Class are "goods" within the meaning of Cal. Civ. Code § 1761(a).

94.     Defendants violated and continue to violate the CLRA by engaging in, *inter alia*, the following practices proscribed by Cal. Civ. Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the online merchandise:

    a)  Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. Cal. Civ. Code § 1770(a)(7);

    b)  Advertising goods or services with intent not to sell them as advertised. Cal. Civ. Code § 1770(a)(9);

95.     Pursuant to § 1782(a) of the CLRA, on September 20, 2019, Plaintiff's counsel notified Defendants in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to act.

96.     Nevertheless, Defendants continue to sell the mislabeled Products to the consuming public.

97.     As a result of Defendant's actions set forth herein, Plaintiff and each of the other Members of the California Subclass have sustained damages in an amount to be proven at trial.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the California Sub-Class proposed in this Count, respectfully requests that the Court enter judgment as follows:

    A.     Declaring that this action is a proper class action, certifying the California Sub-Class as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Class;

B.    Enjoining Defendants from engaging in the unlawful conduct set forth herein;

C.    Ordering Defendants to pay actual damages to Plaintiff and the other Members of the Class;

D.    Ordering Defendants to pay punitive damages, as allowable by law, to Plaintiff and the other Members of the Class;

E.    Ordering Defendants to pay reasonable attorneys' fees and litigation costs, to the extent allowable by law, to Plaintiff and the other Members of the Class;

F.    Ordering Defendants to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

## COUNT IV

### Breach of Express Warranties
### (On behalf of the National Class and the California Sub-Class)

98.    Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

99.    Plaintiff brings this claim against Defendants on behalf of himself, the National Class, and the California Subclass (for purposes of this Count, the "Classes").

100.    Defendant made express warranties and representations in respect to the Product's nutrient content including, but not limited to, the total grams of protein, carbohydrates, fat and calories per serving.

101.    This labeling, marketing, and advertising, which existed on the Product's labels when they left Defendants' control and were made directly to consumers and end purchasers of the Product, constitute express warranties and became part of the basis of the bargain between the parties and created a collective "express warranty" that the Products would conform to Defendants' affirmations and promises.

102. Defendants breached express warranties about the Product and its qualities because Defendants' statements about the Products were false and the Product does not conform to Defendants' affirmations and promises described above.

103. Plaintiff and the members of the Classes would not have purchased the Product had they known the true facts about the nutrient content of the Product.

104. Defendants' conduct described in this Complaint constitutes a breach of express warranties under UCC § 2-313, as adopted by the following state statutes:

Ala. Code § 7-2-313, et seq.; Alaska Stat. § 45.02.313, et seq.; Ariz. Rev. Stat. § 47-2313, et seq.; Ark. Code § 4-2-313, et seq.; Cal. Com. Code § 2313, et seq.; Colo. Rev. Stat. § 4-2-313, et seq.; Conn. Gen. Stat. § 42a-2-313, et seq.; 6 Del. C. § 2-313, et seq.; D.C. Code § 28:2-313, et seq.; Fla. Stat. § 672.313, et seq.; O.C.G.A. § 11-2-313, et seq.; Haw. Rev. Stat. § 490:2-313, et seq.; Idaho Code § 28-2-313, et seq.; 810 Ill. Comp. Stat. 5/2-313, et seq.; Ind. Code § 26-1-2-313, et seq.; Iowa Code § 554.2313, et seq.; Kan. Stat. § 84-2-313, et seq.; Ky. Rev. Stat. § 355.2-313, et seq.; La. Rev. Stat § 9:2800.53(6) , et seq.; 11 M.R.S.A. § 2-313, et seq.; Md. Code Ann., Com. Law § 2-313, et seq.; Mass. Code 106, § 2-313, et seq.; Mich. Comp. Laws 440.2313, et seq.; Minn. Stat. § 336.2-313, et seq.; Miss. Code § 75-2-313, et seq.; Mo. Rev. Stat. § 400.2-313, et seq.; Mont. Code § 30-2-313, et seq.; Neb. U.C.C. § 2-313, et seq.; Nev. Rev. Stat. § 104.2313, et seq.; N.H. Rev. Stat. § 382-A:2-313, et seq.; N.J. Stat. § 12A:2-313, et seq.; N.M. Stat. § 55-2-313, et seq.; N.Y. U.C.C. § 2-313, et seq.; N.C. Gen. Stat. § 25-2-313, et seq.; N.D. Cent. Code § 41-02-30, et seq.; Ohio Rev. Code § 1302.26, et seq.; Okla. Stat. Tit. 12A, § 2-313, et seq.; Or. Rev. Stat. § 72.3130, et seq.; 13 Pa. Cons. Stat. § 2313, et seq.; R.I. Gen. Laws § 6A-2-313, et seq.; S.C. Code § 36-2-313, et seq.; S.D. Codified Laws § 57A-2-313, et seq.; Tenn. Code § 47-2- 313, et seq.; Tex. Bus. & Com. Code § 17.50; V.T.C.A., Bus. & C. § 2.313, et seq.; Utah Code § 70A-2-313, et seq.; Vt. Stat. Tit. 9A, § 2-313, et seq.; Va. Code § 8.2-313, et seq.; Wash. Rev. Code § 62A.2-313, et seq.; W. Va. Code § 46-2-313, et seq.; Wis. Stat. § 402.313, et seq.; and Wyo. Stat. § 34.1-2-313, et seq.

105. As a result of Defendants' breach of warranty, Plaintiff and each member of the Classes has been damaged in an amount equal to the difference in value between the Product containing an accurate amount of nutrient content and the Product's actual nutrient content and/or in an amount to be determined at trial and any consequential damages resulting from their purchases.

106.     Plaintiff and the Classes were not required to notify Defendants of their breaches of warranty because the goods sold were for human ingestion.

107.     Nonetheless, on September 20, 2019, prior to filing suit, Plaintiff and Members of the Classes notified Defendants as to their breaches of warranty after receiving the test results, which showed the Product's nutrient content is inaccurately labeled, and prior to filing this action. *See* Ex. 4 (Pre-Suit Notification Letter).

108.     Nevertheless, Defendants continue to sell the mislabeled Products to the consuming public.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Members of the Classes proposed in this Count, respectfully requests that the Court enter judgment as follows:

A.     Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

B.     Enjoining Defendants from engaging in the unlawful conduct set forth herein;

C.     Ordering Defendants to pay damages to Plaintiff and the other Members of the Classes, including, but not limited to, damages resulting in the ordinary course of events from the sellers' breach as determined in any manner which is reasonable, and any incidental and consequential damages;

D.     Ordering Defendants to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

E.     Ordering such other and further relief as may be just and proper.

## COUNT V

### Unjust Enrichment
### (In the Alternative to Count IV and on
### Behalf of the National Class and the California Sub-Class)

109.    Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

110.    Plaintiff brings this claim against Defendants on behalf of himself, the National Class, and the California Subclass (for purposes of this Count, the "Classes").

111.    Plaintiff and the other members of the Classes conferred benefits on Defendants by purchasing the Product.

112.    Defendants have been unjustly enriched in retaining the revenues derived from the purchases of the Product by Plaintiff and the other Members of the Classes. Retention of those monies under these circumstances is unjust and inequitable because Defendants' labeling of the Product was misleading to consumers, which caused damages to Plaintiff and the other Members of the Classes because they would have not purchased the Product had they known the true facts.

113.    Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff and the other members of the Classes is unjust and inequitable, Defendants must pay restitution to Plaintiff and the other members of the Classes for its unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes proposed in this Count, respectfully requests that the Court enter judgment as follows:

A.      Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

B.    Ordering Defendants to pay restitution to Plaintiff and the other members of the Classes;

C.    Ordering Defendants to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

D.    Ordering such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

114.    Plaintiff demands a trial by jury of all claims in this Complaint so triable. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

Dated: October 21, 2019

Respectfully submitted,

**MICHAEL JORDAN**

 */s/ Paul Souferis*
Paul Souferis, Esq.
Mikhail Shvartsman, Esq.
**Souferis & Shvartsman, PLLC**
201 S. Biscayne Blvd., Suite 1210
Miami, FL 33131
Phone: 305.928.5878
paul@havejustice.com
mikhail@havejustice.com


Gary M. Klinger, Esq. (*pro hac vice forthcoming*)
**KOZONIS & KLINGER, LTD.**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Phone: 312.283.3814
Fax: 773.496.8617
gklinger@kozonislaw.com

*Attorneys for Plaintiff and*
*the Proposed Classes*